UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY HOGAN, #209327,

        Petitioner,

    v.                          CASE NO. 2:19-CV-11682
                                     HON. GEORGE CARAM STEEH

CONNIE HORTON,

        Respondent.
_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

Michigan prisoner Jeffrey Hogan ("petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  The petitioner was convicted of two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(c)(sexual penetration during the commission of another felony), following a jury trial in the Wayne County Circuit Court and was sentenced, as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 75 to 120 years imprisonment.  In his pleadings, he

raises claims concerning the sufficiency of the evidence, the effectiveness of trial counsel, the admission of DNA evidence, and the validity of his sentence.  For the reasons stated herein, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

The petitioner's convictions arise from his sexual assault of a woman in an alley in Detroit, Michigan in 2001. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); <u>Wagner v. Smith</u>, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant was convicted of sexually assaulting the female victim in an alley on the west side of Detroit on the night of June 11, 2001. As the victim was walking down a neighborhood street, defendant walked past her. Shortly thereafter, defendant approached the victim from behind, grabbed her by the neck, and forced her into an alley. Defendant told the victim not to scream, removed the victim's clothes, and ultimately forced his penis into her vagina and then her mouth. Defendant threatened to kill the victim before fleeing. The victim remained in the alley for some time before feeling safe to leave. Eventually, the victim reported the incident to the police, who transported her to a hospital where a sexual assault examination was performed. In 2015, defendant was identified as a suspect through the Combined Offender DNA Index System ("CODIS"). Forensic testing revealed that defendant was the major donor of DNA recovered from the victim's

vagina. The victim subsequently identified defendant in a photographic lineup and at trial.

In addition to the charged offenses, the prosecution presented evidence of two other incidents that occurred in 1996 and 1997, in which defendant assaulted two other women, VB and EM. VB testified at trial that, during the early morning hours on August 21, 1997, she was walking on a main street on the west side of Detroit when she met defendant. The two talked and walked together and eventually "cut through" an unfenced backyard. In that yard, defendant grabbed VB around the neck from behind and threw her to the ground. Defendant forced his penis into VB's vagina and instructed her to shut up. Before leaving, defendant told VB not to look at him. Forensic evidence introduced at trial indicated that defendant's DNA matched DNA found on VB after the assault.

EM informed the prosecutor that she would testify at trial. The prosecution noticed defendant that EM would testify that, on December 23, 1996, while she was on the west side of Detroit, defendant approached her from behind, grabbed her around her neck, and dragged her into a vacant house. There he made her put her hands against the wall, told her he would kill her if she moved, and forced her to undress. He then forced his penis into her anus and then her vagina. In its opening statement, the prosecution explained that EM would testify. The prosecution presented evidence that defendant's DNA matched DNA found on EM after she was sexually assaulted in 1996. When EM subsequently did not show for trial, defendant moved to instruct the jury, in accordance with M Crim JI 5.12, that it may infer that EM's testimony would have been unfavorable to the prosecution's case. According to defense counsel, this instruction was the "only way" to ensure defendant received a fair trial.

The trial court agreed and instructed the jury in accordance with M Crim JI 5.12. Nevertheless, the jury found defendant guilty of the charged offenses.

-3-

People v. Hogan, No. 332966, 2017 WL 4655215, *1-2 (Mich. Ct. App. Oct. 17, 2017) (unpublished, per curiam).

Following his convictions and sentencing, the petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review.  The court denied relief on those claims and affirmed his convictions and sentences.  Id. at *2-5.  The petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  People v. Hogan, 503 Mich. 872, 917 N.W.2d 646 (2018).

The petitioner thereafter filed his federal habeas petition.  He raises the following claims:

I.      The prosecution failed to prove all the elements of kidnapping beyond a reasonable doubt and the elements of count two, which is entry into the victim's mouth (fellatio), never proven [be]cause the lab results are negative.

II.     Trial counsel's performance fell below an objective standard of reasonableness [and was] ineffective.  He introduced evidence on an element of the crime that the prosecutor had not introduced, therefore the prosecutor never proved the asportation element for the commission of kidnapping.  In this case, it must be proven that [asportation] was for the purpose of a kidnapping and was not part of the crime of criminal sexual conduct. [It was] never proven.

-4-

III.    Violation of the Confrontation Clause.  DNA was admitted
to the jury [but the] witness did not come to court.

IV.    [He] is entitled to re-sentencing.  They scored where no
facts were admitted [and] offense variables went outside
the guidelines.

The respondent has filed an answer to the petition contending that it should

be denied.

## III.    Standard of Review

Federal law imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not
be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of
the claim –

(1)    resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2)    resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme

Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  Renico v. Lett, 559 U.S. 766, 773 (2010)

-6-

(quoting Lindh, 521 U.S. at 333, n. 7; Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id; see also White v. Woodall, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  Woods v. Etherton, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)); Lockyer, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV.   Analysis

-9-

## A.    Sufficiency of the Evidence

The petitioner first asserts that he is entitled to habeas relief because the prosecutor failed to present sufficient evidence to support his first-degree criminal sexual conduct convictions.  Specifically, he alleges that the prosecution failed to prove the asportation element for the underlying felony of kidnapping to support his convictions.  The respondent contends that this claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime [charged]."  In re Winship, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict ... defeats a petitioner's claim."  Id. at 788-89.

Under Michigan law, the elements of first-degree criminal sexual conduct, as relevant to this case, are:  (1) sexual penetration with another person, (2) under circumstances involving the commission of another felony.  Mich. Comp. Laws § 750.520b(1)(c); People v. Waltonen, 272

-11-

Mich. App. 678, 686, 728 N.W.2d 881, 886 (2006).  The elements of the

underlying felony of kidnapping under a forcible confinement theory, as

relevant to this case, are: (1) forcible confinement of another within state,

(2) done willfully, maliciously, and without lawful authority, (3) against the

will of the victim, and (4) asportation of the victim which is not merely

incidental to an underlying crime.... Mich. Comp. Laws §750.349 (prior to

amendments); People v. Wesley, 421 Mich. 375, 388, 365 N.W.2d 692

(1984).  The asportation element may be satisfied by proof that the

movement increased the risk of danger to the victim.  People v. Worden, 71

Mich. App. 507, 515, 248 N.W.2d 597 (1976). A defendant's movement of

the victim to a more secluded area increases the danger to the victim and

thus meets the asportation requirement.  Id.

    As with any offense, the prosecution must prove beyond a

reasonable doubt that the defendant committed the charged offense.

People v. Kern, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct or

circumstantial evidence and reasonable inferences arising from that

evidence may constitute satisfactory proof of the elements of an offense,

People v. Jolly, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the

identity of the perpetrator, Kern, 6 Mich. App. at 409, see also People v.

-12-

Johnson, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the

defendant's intent or state of mind.  People v. Dumas, 454 Mich. 390, 398,

563 N.W.2d 31 (1997); see also People v. Nowack, 462 Mich. 392, 402-03,

614 N.W.2d 78 (2000).

    With these state law principles in mind and applying the Jackson

standard, the Michigan Court of Appeals denied relief on this claim.  The

court explained in relevant part:

> Viewed in a light most favorable to the prosecution, the victim's
> testimony that defendant accosted her from behind, tightly
> grabbed her by the neck, and then moved her from the public
> street to a dark alley was sufficient for the jury to find
> asportation for purposes of kidnapping. This movement was not
> merely incidental to the sexual assault because defendant moved
> the victim to a location that presented a greater danger
> given the alley's isolated and darker location. Further, after
> sexually assaulting the victim, defendant threatened to kill the
> victim, and because of those threats, the victim, limited by her
> fear of being killed, remained in the alley until she felt safe to
> leave. From this evidence, a rational trier of fact could find
> beyond a reasonable doubt that defendant moved the victim in
> a manner not merely incidental to the criminal assaults. Wesley,
> 421 Mich. at 388. Accordingly, sufficient evidence supports
> defendant's convictions.

Hogan, 2017 WL 4655215 at *2.

    The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of Supreme Court precedent or

the facts.  The prosecution presented sufficient evidence of asportation

through the victim's testimony that the petitioner grabbed her on the street and dragged her into a dark alley where he committed the sexual assaults and threatened to kill her.  To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction.  See Tucker v. Palmer, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).  Such testimony was sufficient to show that the petitioner moved the victim to a place of greater danger in order to establish the underlying felony of kidnapping and support the petitioner's first-degree criminal sexual conduct convictions.

The petitioner challenges the jury's evaluation of the evidence presented at trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The evidence presented at trial, viewed a light favorable to the prosecution, established the petitioner's guilt of two

counts of first-degree criminal sexual conduct beyond a reasonable doubt. Habeas relief is not warranted on this claim.

The petitioner also seems to assert that the prosecution failed to present sufficient evidence of fellatio to support one of his first-degree criminal sexual conduct convictions because "lab results were negative." The petitioner did not properly raise/exhaust this claim in the state courts. Nonetheless, he is not entitled to relief on such a basis. First, the claim is conclusory. Conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. See Cross v. Stovall, 238 F. App'x 32, 39-40 (6th Cir. 2007); Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); see also Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Second, the claim lacks merit. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MICH. COMP. LAWS § 750.520a(r)(formerly subpart

(m)); <u>People v. Garrow</u>, 99 Mich. App. 834, 837; 298 N.W.2d 627 (1980).

The victim testified that she gave the petitioner oral sex and that he put his

penis in her mouth.  ECF No. 8-3, PageID.274.  Such testimony is sufficient

to establish fellatio to support one of the petitioner's first-degree criminal

sexual conduct convictions.  A sexual assault victim's testimony need not

be corroborated, MICH. COMP. LAWS § 750.520h, and a victim's testimony

alone can be sufficient to sustain a conviction.  <u>Tucker</u>, 541 F.3d at 658.

The prosecution presented sufficient evidence of oral penetration (fellatio)

to support the petitioner's first-degree criminal sexual conduct conviction

that was based on such conduct.  Habeas relief is not warranted on this

claim.

## B.    Effectiveness of Trial Counsel

The petitioner next asserts that he is entitled to habeas relief

because trial counsel was ineffective for introducing evidence on the

asportation element for the underlying felony of kidnapping.  The

respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a

criminal defendant the right to the effective assistance of counsel.  In

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set

forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  Id.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  Id. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  The petitioner bears the burden of overcoming the presumption that the disputed actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.  Id.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  Strickland, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Harrington, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Applying the Strickland standard, the Michigan Court of Appeals denied relief on this claim.  The court explained in relevant part:

> The record confirms that on direct examination from the
> prosecutor the victim testified regarding her movement during

-18-

the offense and referred to a map of the location to illustrate her movement for the jury. Defense counsel further explored this issue on cross-examination, eliciting additional testimony regarding the asportation element of kidnapping. Defense counsel used this additional testimony to highlight inconsistencies in the victim's story and to discredit her testimony at trial. Accordingly, we conclude that defense counsel's questioning evidenced a clear, and perfectly reasonable, trial strategy. The fact that this strategy did not ultimately prevail does not render counsel's assistance ineffective.

Hogan, 2017 WL 4655215 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent or the facts.  The record indicates that the victim testified on direct examination about her movements during the offense and referred to a map of the location.  Trial counsel then further inquired into the matter to point out discrepancies in the victim's version of events in an effort to discredit her.  Counsel's trial strategy in this regard was reasonable given the importance of the victim's testimony.  The fact that the strategy was ultimately unsuccessful does not mean that counsel was ineffective.  See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  The

petitioner fails to establish that trial counsel was ineffective.  Habeas relief
is not warranted on this claim.

### C.    Admission of DNA Evidence

The petitioner next asserts that he is entitled to habeas relief
because the trial court violated his confrontation rights by admitting
evidence that the petitioner's DNA matched the sample taken from another
rape victim, EM, who failed to appear at trial.  The respondent contends
that this claim is waived, procedurally defaulted, and/or that it lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a
criminal defendant the right to confront the witnesses against him or her.
U.S. Const., Am. VI.  One of the main concerns of the Confrontation
Clause is to ensure the reliability of evidence through cross-examination.
Maryland v. Craig, 497 U.S. 836, 845 (1990).  The Confrontation Clause
thus prohibits the admission of an out-of-court testimonial statement at a
criminal trial unless the witness is unavailable to testify and the defendant
had a prior opportunity for cross-examination.  Crawford v. Washington,
541 U.S. 36, 59 (2004).

The Michigan Court of Appeals denied relief on this claim finding that
it was waived.  The court explained:

Defendant next argues that the trial court violated the
Confrontation Clause because it did not strike testimony that
defendant's DNA matched DNA recovered from EM after EM
failed to come to court to testify. We conclude, however, that
defendant has waived any claim that the testimony should have
been stricken due to the nonappearance of EM.

Defendant did not request that the trial court strike the
testimony. Rather, defense counsel specifically requested, and
argued for, the missing witness instruction in M Crim JI 5.12.
Defense counsel argued that the missing witness instruction
was "the only way" defendant's trial could be fair because the
testimony regarding DNA found after EM's assault was a bell
that could not be unrung. The trial court granted defense
counsel's request, over the prosecutor's objection, and
instructed the jury as defendant requested. Defense counsel
thereafter used EM's failure to appear to suggest in closing
argument that defendant's sexual encounter with EM was
consensual and that she was added by the prosecution only to
bolster the victim's fabricated testimony.

Defendant cannot deem one resolution proper at trial and argue
for a different resolution on appeal when the outcome does not
turn in his favor. People v. Green, 228 Mich. App. 684, 691; 580
N.W.2d 444 (1998). "To do so would allow a defendant to
harbor error as an appellate parachute." Id. In this instance, we
conclude that, by requesting the missing witness instruction,
defendant waived any challenge regarding his right of
confrontation and has extinguished any error. People v. Carter,
462 Mich. 206, 215–216; 612 N.W.2d 144 (2000).

Hogan, 2017 WL 4655215 at *4.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of Supreme Court precedent or

the facts. Waiver is an "'intentional relinquishment of a known right.'"

United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v.

Zerbst, 304 U.S. 458, 464 (1938)).  A criminal defendant who waives rights

"may not then seek appellate review of claimed deprivation of those rights,

for his waiver has extinguished any error."  United States v. Griffin, 84 F.3d

912, 924 (7th Cir. 1996) (citing Olano, 507 U.S. at 733-34); see also

Shahideh v. McKee, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a

recognized, independent and adequate state law ground for refusing to

review alleged trial errors").  The right to confrontation may be waived.

Melendez-Diaz v. Massachusetts, 557 U.S. 305, 314, n. 3 (2009).

Because defense counsel did not seek to strike the evidence or move for a

mistrial, but instead requested a missing witness instruction, and that

request was granted (and counsel argued that EM's failure to testify should

be held against the prosecution), the petitioner has waived review of this

issue.  See Morgan v. Lafler, 452 F. App'x 637, 646 n. 3 (6th Cir. 2011);

United States v. Chun Ya Cheung, 350 F. App'x 19, 21-22 (6th Cir. 2009).

Habeas relief is not warranted on this claim.

### D.    Sentencing

Lastly, the petitioner asserts that he is entitled to habeas relief

because the trial court erred in scoring several offense variables of the

state sentencing guidelines by relying upon judicially-found facts that were

neither admitted by him nor proven beyond a reasonable doubt.  The

respondent contends that this claim lacks merit.

A sentence imposed within the statutory limits is generally not subject

to federal habeas review.  Townsend v. Burke, 334 U.S. 736, 741 (1948);

Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  Claims which

arise out of a state trial court's sentencing decision are not normally

cognizable upon habeas review unless the petitioner can show that the

sentence imposed exceeded the statutory limits or is wholly unauthorized

by law.  Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

The petitioner's sentences are within the statutory maximums for his

offenses.  See MICH. COMP. LAWS §§ 750.520b (authorizing a maximum

sentence of life imprisonment for first-degree criminal sexual conduct),

769.12 (authorizing a maximum sentence of life imprisonment for a fourth

habitual offender).  Consequently, his sentences are insulated from habeas

review absent a federal constitutional violation.

The Michigan Court of Appeals denied relief on this claim.  The court

explained:

> In People v. Lockridge, 498 Mich. 358, 364; 870 N.W.2d 502
> (2015), our Supreme Court held that Michigan's sentencing

guidelines were constitutionally deficient, in violation of the Sixth Amendment, to the extent that they required "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range." To remedy this deficiency, the Court held that the guidelines were advisory only. Id. at 365. Under Lockridge, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence" and are permitted to score the OVs using judicially-found facts. Id. at 392 and n 28.

As this Court explained in People v. Biddles, 316 Mich. App. 148, 158; 896 N.W.2d 461 (2016):

> The constitutional evil addressed by the Lockridge Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with required application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in Lockridge by making the guidelines advisory, not by eliminating judicial fact-finding.

Thus, a defendant sentenced after Lockridge is not entitled to resentencing merely because the trial court engaged in judicial fact-finding to score the OVs. Instead, to be entitled to relief under Lockridge, a defendant must demonstrate that his minimum sentence was actually constrained by a violation of the Sixth Amendment, i.e., by the trial court's adherence to mandatory sentencing guidelines. Lockridge, 498 Mich. at 395.

In this case, defendant was sentenced eight months after Lockridge was decided. The trial court is presumed to have been aware of Lockridge when it imposed sentence, see People v. Alexander, 234 Mich. App. 665, 674–675; 599 N.W.2d 749 (1999), and there is nothing in the record to suggest that the trial court failed to recognize that the

-24-

guidelines were advisory or that the court sentenced defendant in a manner inconsistent with <u>Lockridge</u>. Because the guidelines were advisory, and the trial court was permitted to rely on judicially-found facts to score OVs 1, 3, 4, 7, and 10, defendant has not demonstrated that an unconstitutional constraint on judicial discretion actually impaired his Sixth Amendment right. <u>Lockridge</u>, 498 Mich. at 395. Defendant is not entitled to resentencing.

<u>Hogan</u>, 2017 WL 4655215 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The petitioner's claim arises from the United States Supreme Court's decisions in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); and <u>Alleyne v. United States</u>, 570 U.S. 99 (2013).  In <u>Apprendi</u>, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U .S. at 490.  In <u>Blakely</u>, the Supreme Court clarified "that the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely</u>, 542 U.S. at 303.  In <u>Alleyne</u>, the Supreme Court extended <u>Apprendi</u> to mandatory minimum sentences, ruling that any fact that

-25-

increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt. Alleyne, 570 U.S. at 111-12.

In People v. Lockridge, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under Alleyne, the Michigan sentencing guidelines violate the Sixth Amendment because the guidelines "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range." Lockridge, 870 N.W.2d at 506. The court's remedy was to make the guidelines advisory only. Id. at 520-21. The United States Court of Appeals for the Sixth Circuit has since agreed with Lockridge and ruled that Alleyne clearly established that Michigan's pre-Lockridge mandatory minimum sentencing guidelines scheme violated the Sixth Amendment. Robinson v. Woods, 901 F.3d 710, 716-18 (6th Cir. 2018). The Sixth Circuit explained that "[a]t bottom, Michigan's sentencing regime violated Alleyne's prohibition on the use of judge-found facts to increase mandatory minimum sentences." Id. at 716. This Court is bound by the Sixth Circuit's decision.

In this case, the petitioner was sentenced in March, 2016, well after Lockridge was decided in July, 2015.  At that point, the Michigan sentencing guidelines were advisory, not mandatory.  Purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. See Booker, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); Banks v. Parish, No. 1:21-CV-00042, 2021 WL 266621, *6-7 (W.D. Mich. Jan. 27, 2021) (denying habeas relief on similar claim because the petitioner was sentenced after Lockridge was decided); Jakubowski v. Chapman, No. 2:19-CV-13136, 2021 WL 253878, *5 (E.D. Mich. Jan. 26, 2021) (same).

Because the guidelines were advisory at the time of sentencing, the trial court exercised its discretion in imposing the petitioner's sentences. "Facts that the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment."  Holder v. Jackson, No. 17-CV-408, 2017 WL 3205762, *4 (W.D. Mich. July 28, 2017) (summarily

dismissing habeas petition raising similar sentencing claim); <u>see also</u>

<u>Wiggins v. Balcarcel</u>, No. 18-CV-10124, 2018 WL 659280, *5 (E.D. Mich.

Feb. 1, 2018) (citing <u>Holder</u> and denying habeas relief on sentencing

claim).  The petitioner's sentences were not imposed in violation of the

Sixth Amendment.

Lastly, to the extent that the petitioner contests the state court's

interpretation and application of state law as to his sentencing (or any other

issue), he is not entitled to relief.  Any claim that the trial court erred in

scoring the offense variables or departing above the guidelines is not

cognizable on habeas review because it is a state law claim.  <u>See</u> <u>Tironi v.</u>

<u>Birkett</u>, 252 F. App'x 724, 725 (6th Cir. 2007); <u>Howard v. White</u>, 76 F. App'x

52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state

sentencing guidelines and crediting statutes is a matter of state concern

only."); <u>Cheatham v. Hosey</u>, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir.

Nov. 19, 1993) (departure from state sentencing guidelines is a state law

issue not cognizable on federal habeas review); <u>see also</u> <u>Kissner v.</u>

<u>Palmer</u>, 826 F.3d 898, 904 (6th Cir. 2016); <u>McPhail v. Renico</u>, 412 F. Supp.

2d 647, 656 (E.D. Mich. 2006).  It is well-settled that "a state court's

interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting on habeas review." Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. Estelle v. McGuire, 502 U.S. 62. 67-68 (1991). The petitioner fails to state a cognizable habeas claim as to any such state law issues. Habeas relief is not warranted on this claim.

## V.  Conclusion

For the reasons stated, the Court concludes that the petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  The petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  See FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

Dated:  March 15, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 15, 2022, by electronic and/or ordinary mail and also on Jeffery A. Hogan #209327, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.

s/Brianna Sauve
Deputy Clerk